UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff | ) | |
| | ) | Criminal No. 07-23-GFVT |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MARTIN S. PEDRO, | ) | **&** |
| Defendant. | ) | **ORDER** |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court is Defendant Martin Pedro's Motion to Alter or Amend, Motion for Recusal, Motion for Leave to Appeal In Forma Pauperis, and Motion for Certificate of Appealability. [R. 361, 362, 365, and 371.] For the reasons explained below, the Court will now DENY all of these motions.

**I**

In 2008, a jury found Pedro guilty of forcibly assaulting three correctional officers during a prison fight. [R. 341 at 1-2.] The jury had the benefit of four different surveillance videos that showed Pedro "taking a swing at" one officer, "physically beating" the second, and kicking the third "twice in the head." [*Id.* at 2.] Pedro later moved for a new trial and/or acquittal on the alleged grounds that, among other things, the Government had failed to provide enough evidence to support the assault charge. The Court denied his motion, and the Sixth Circuit affirmed that denial on direct appeal. [*Id.* at 2-3.] Pedro then filed a motion to vacate in this Court, resurrecting many of the same arguments that the Sixth Circuit had already rejected on appeal. [*Id.* at 8.]

In his Report and Recommendation ("R&R"), Magistrate Judge Edward B. Atkins recommended denial of Pedro's Motion to Vacate. [R. 341 at 17.] Pedro objected to Judge

Atkins's R&R, but the Court overruled those objections and adopted the Magistrate's recommendation in September 2015. [R. 356.] The Court also denied Pedro a certificate of appealability, although he nevertheless filed a Notice of Appeal, a Motion for Leave to Appeal In Forma Pauperis, a Motion for Certificate of Appealability, and a Motion to Alter or Amend. [R. 361, 362, 365, 371.]

The Court initially responded to Pedro's Motion to Alter or Amend on May 31, 2016. [R. 368.] In that order, the Court identified only one basis for revisiting its denial of Pedro's motion to vacate; specifically, the Court determined that an evidentiary hearing was necessary to investigate Pedro's claim that "newly discovered evidence" showed his trial attorney never informed him about the first of two plea agreements offered by the United States before trial. [*Id.* at 7.] The parties thus held a hearing in August 2016 for the "sole purpose" of determining "(1) Pedro's knowledge of the first alleged plea offer and (2) any differences that existed between this offer and the later proposal that Pedro rejected." [*Id.* at 8.]

At the hearing, Pedro's trial attorney, Cullen Gault, noted that his representation of Pedro ended approximately eight years ago, and he simply could not recall whether he communicated the first plea offer to him. [TR: Evidentiary Hearing at 45.] Pedro's current attorney responded, "You don't know as you sit here today whether you ever communicated with him [about the offer], do you?" Gault replied, "I could tell you in 23 years to my knowledge I've always communicated plea agreements." [*Id*.] Counsel then asked Gault if he remembered telling Pedro "that the potential existed that if he didn't take the plea, he'd lose three points for acceptance of responsibility." [*Id.* at 48.] Gault again responded, "I don't recall. I wish I could." [*Id*.] He did testify, however, that Pedro never "at any point" expressed "any interest" in pleading guilty, and that Pedro appeared to have "no desire to ever want to plead guilty." [*Id.* at 34-35.]

2

When Pedro took the stand, his attorney asked him a series of leading questions about the likelihood that he would have accepted the first plea offer:

> Q. And so if we look at the plea agreement and just on the face of its terms and you look at the presentence report, obviously you got the [added] benefit [in the PSR] of the of the 2 point reduction because [the Probation Office] found it wasn't life threatening injuries; is that correct?
>
> A. Correct.
>
> Q. And then but you also lost the three points for acceptance of responsibility?
>
> A. Correct.
>
> [. . .]
>
> Q. Okay. And in addition to that, if someone had said to you during the time that they were discussing the plea agreement, Mr. Pedro, if you plead, if you plead guilty and get the acceptance of responsibility you have a better chance of being sentenced within the guidelines and ending up with a more significant sentence consecutive to the 813 months [you are already serving,] would you have considered those arguments or those discussions?
>
> A. Yes, I would have.

[*Id.* at 10-12.] These leading questions notwithstanding, Pedro's later testimony expressly and repeatedly affirmed that he did not care about the length of his sentence during the time period in question. The United States asked Pedro, for example, if he had filed the present challenge because he "hope[d] for . . . a sentence that [was] lower than the one [he was] serving right now." [*Id.* at 19.] Pedro responded, "Well to be completely honest with you sir[,] I'm serving a 68 year sentence right now that's a final conviction . . . so these proceedings right now as far as getting a lower sentence or not are really irrelevant." [*Id.*] The prosecutor then asked Pedro if he "recall[ed] saying at [his] sentencing that whether [he] received twenty years or ten years[,] it didn't matter to [him]." [*Id.*] Pedro said, "Yes, I think I did say that," and reiterated that he was already "serving a sixty-eight year sentence from the Southern District of New York" before his trial began, and

3

that he knew his prior sentence would "run[ ] consecutive" to any sentence he received from this Court. [*Id.*] For this reason, he had explained to the Court at sentencing that "regardless of what transpired, it really wouldn't matter to [him] personally." [*Id.*]

Although he admitted that the length of his sentence was "irrelevant" and "really [didn't] matter to him" at the time, Pedro still insisted that he would have accepted the first plea offer in order to bolster the defense of his co-defendants. [*Id.*] He suggested that he was "the main aggressor on the video, [and he thought] it would look better to the jury if [his] co-defendants could say listen, this dude was the dude that assaulted these officers, he's pled guilty . . . and [the co-defendants] just had . . . really nothing to do with it." [*Id.* at 21.] But later, the United States asked Pedro if he knew that he could have pled guilty for this purpose at any time even "without a plea agreement." [*Id.* at 21.] Pedro responded, "Yes I understand you can plead guilty. But when you plead guilty, I don't think you can get acceptance of responsibility . . . and all that." [*Id.* at 21-22.] The prosecutor then reminded Pedro of his previous testimony that he "didn't care at the time whether [he] got twenty years or ten years." [*Id.* at 22.] Pedro replied, "Like I said, at that point in my life, I really didn't." [*Id.*] The Government then asked, "[w]ere you or were you not concerned about the amount of time you would get?" [*Id.*] Pedro evaded the question and instead provided a discursive account of his "heated" discussions with Gault before trial, including some ambiguous disagreement about the definition of "serious bodily injury." [*Id.* at 22-23.] Understandably confused, the prosecutor responded, "I don't mean to repeat myself but I just want a clear record . . . was it your position at the time that you did or did not care about how much time you received on this case?" [*Id.* at 23.] Pedro finally replied, "at that point in time I was just trying to get off the case." [*Id.* at 24.] Only moments later, however, he repeated that he knew "[he] could have pled guilty but [he] didn't." [*Id.* at 26.]

4

Lastly, the United States asked Pedro about the terms of the second plea agreement that he rejected. Pedro recalled that the Government orally offered him a plea deal shortly before the start of trial, and the agreement called for a prison sentence of "either ten or fifteen [years]." [*Id.* at 17.] But Pedro suggested that he could not accept this offer because it was a "global deal" and the Government would not permit him to accept the agreement unless all of his co-defendants also accepted it. [*Id.*] A moment later, however, Pedro offered an utterly different rationale for rejecting the second offer. He recounted, "They offered me a 15 year hard capped deal. I'd already looked at the United States sentencing guidelines and knew I was a category IV and knew where I was going to shake out. Based, based, at that point in time, my whole reason is, why would I take 15 years when even if I go to trial and blew trial it would be a lesser sentence? It didn't make any sense to me." [*Id.* at 28.]

## II

### A

A claim of ineffective assistance requires the defendant to show that (1) his attorney's performance fell below an objective standard of reasonable professional assistance and (2) there is a reasonable probability that counsel's deficient performance prejudiced the outcome of the defendant's case. *See Strickland v. Washington,* 466 U.S. 668, 687–88 (1984). Courts have consistently held that an attorney's failure to communicate a formal plea offer constitutes deficient performance. *See, e.g., Missouri v. Frye*, 132 S. Ct. 1399 (2012). But in order to demonstrate prejudice in this context, a defendant must also show "there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the

offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). The Sixth Circuit has relatedly held that "a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer." *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003) (citation omitted).

**B**

Pedro's claim fails at the prejudice stage of the *Strickland* analysis. This is true for at least three reasons. First, there is no "substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment."[1] *Id*. The single assault count listed in the indictment and the single assault charge identified in the plea agreement are identical. [R. 29 at 2, R. 361-8 at 3.][2] And Pedro's plea agreement stated that he might be "classified as a career offender," resulting in an offense level of "32" and a "criminal history category [of] VI."[3] [R. 361-8 at 6.] This career offender enhancement, coupled with a three-level reduction for acceptance of responsibility,[4] would have resulted in an offense level of 29 and a criminal history score of VI.

---

[1] It is debatable whether the "substantial disparity" standard even applies here, given that (1) Pedro was already serving an effective life sentence prior to trial and (2) he admitted that he did not care what sentence he received at the time. [TR: Evidentiary Hearing at 19-23.] But in an abundance of caution, the Court will proceed with this analysis.

[2] The plea agreement available to Pedro at the time was the superseding indictment at DE 29, although he was later arraigned on a second superseding indictment that also contained the single count. [R. 96 at 2.]

[3] Although Pedro did not ultimately receive a career offender enhancement, his career offender status was an open question at the time. Even at his sentencing, the parties continued to debate his criminal history score and the propriety of applying a career offender enhancement. [R. 276 at 216.]

[4] At the evidentiary hearing, Pedro's counsel appeared to argue that this three-level reduction was alone sufficient to create a "substantial disparity." [TR: Evidentiary Hearing at 10-12.] If this disparity, without more, is enough to establish a "reasonable probability" that a defendant would have accepted a plea agreement, then the Sixth Circuit's "substantial disparity" standard is largely meaningless. An indictment will never anticipate a reduction for acceptance of responsibility, and a plea agreement will almost always recognize the possibility of this reduction. To hold that this commonplace distinction creates a "substantial disparity" would require the Court to find prejudice in virtually every case.

The maximum sentence under the sentencing guidelines would have been 188 months, or almost sixteen years. That sentence was approximately five years *more* than the sentence envisioned in Pedro's PSR, over one year more than the sentence called for in the second plea agreement that Pedro rejected, over one year more than the fourteen-and-a-half-year sentence that he actually received, and roughly four years less than the statutory maximum of twenty years.[5] *See* 18 U.S.C. § 111(b). This range of sentences—considered alongside the effective life sentence that Perry was already serving—falls short of the "substantial" disparities commonly recognized by courts. *See, e.g., Leatherman v. Palmer*, 387 F. App'x 533, 535 (6th Cir. 2010) (finding substantial disparity when the plea agreement called for "probation including up to one year of jail time" and the maximum statutory sentence was forty years); *Magana v. Hofbauer*, 263 F.3d 542, 551–52 (6th Cir. 2001) (noting substantial disparity between ten-year sentence in plea agreement and statutory maximum of forty years).

Second, Pedro's testimony that he would have accepted the original plea offer is flatly incredible. Although the Sixth Circuit permits courts to give weight to the self-serving statements of habeas petitioners, the Court need not defer to the incoherent and facially contradictory testimony at issue here. *See, e.g., Merzbacher v. Shearin,* 706 F.3d 356, 366-67 (4th Cir. 2013) (noting "[t]he Sixth Circuit has adopted the view that a [court may give weight to a] petitioner's own *credible* testimony that he would have accepted a plea offer," and adding "it is entirely clear that to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's

---

[5] There appears to be some confusion in the case law about which sources a court should draw upon in applying the "substantial disparity" test. Some courts have looked only to the disparity between the sentence range called for in the plea agreement and the statutory maximum sentence for the relevant counts. *See Magana v. Hofbauer*, 263 F.3d 542, 551–52 (6th Cir. 2001). Others have looked to the disparity between the plea agreement and the defendant's guideline calculation. *See United States v. Morris*, 470 F.3d 596, 603 (6th Cir. 2006). And still others have emphasized the disparity between the plea agreement and the defendant's actual sentence. *See Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). Given this ambiguity, the Court has considered all three measures of disparity.

7

testimony that he would have done so must be credible.") (emphasis added); *Lint v. Prelesnik*, 542 F. App'x 472, 483 (6th Cir. 2013) (calling into question petitioner's "self-serving" statement that he would have accepted plea offer when other evidence undermined his testimony).

Pedro's testimony presented a maze of tangential and mutually exclusive claims about his state of mind prior to trial. To name a few: he suggested that he would have accepted the plea offer in order to "get [a reduction for] acceptance of responsibility," but then repeatedly characterized the length of his sentence as "irrelevant" and affirmed that he "did not care" what sentence he received at the time. [TR: Evidentiary Hearing at 19, 23.] He also claimed that he would have accepted the plea offer in order to "get off the case" for the sole purpose of helping his co-defendants, but then repeatedly acknowledged that he "knew [he] could have pled guilty" at any time and chose not to do so. [*Id.* at 24, 26.] And he insisted that he could not accept the second plea offer—which he alternately described as calling for "ten" or "fifteen" years of imprisonment—because it was a "global deal" that required all of his co-defendants to plead guilty, but then seconds later announced that his "whole reason" for rejecting the agreement was that "even if [he went] to trial and blew trial [he believed he] would [receive] a lesser sentence" than the agreement offered. [*Id.* at 17.]

The Court can identify only two common threads appearing throughout this muddled testimony. One is that, whenever the United States asked Pedro directly about the length of his sentence, he consistently affirmed that (1) he was already serving an effective life sentence prior to his trial and (2) he did not care at the time about the length of his additional prison term. [*Id.* at 19, 23.] The other is that, whenever the United States asked him if he understood that he could have pled guilty at any time before trial, Pedro repeatedly conceded that he knew he could plead guilty at the time and simply chose not to do so. [*Id.* at 21, 26.] This testimony is consistent with

8

Gault's observation that Pedro never "at any point" expressed "any interest" in pleading guilty, and that he appeared to have "no desire to ever want to plead guilty." [*Id.* at 34-35.] It is also consistent with Pedro's rejection of the second plea offer, which apparently called for a lesser sentence than that envisioned in the first agreement. On these facts, the Court finds no reasonable probability that Pedro would have accepted the first plea offer. *See Lafler*, 132 S. Ct. at 1385.

For a similar reason, the Court also finds no reasonable probability that the Court would have accepted Pedro's hypothetical plea. At a rearraignment, the Court will only accept a defendant's voluntary plea if he actually admits to the factual bases for the charges against him. Throughout every stage of his prosecution, Pedro fiercely insisted that correctional officers instigated the prison fight by threatening and targeting the defendants on the basis of their race. [*See, e.g.,* R. 276 at 106-107.] Precisely because he was already serving an effective life sentence, Pedro had little incentive to change the substance or tone of this defense. At his sentencing, for example, the Court noted that Pedro had consistently expressed "an instinct to . . . put the entire prison system on trial." [R. 276 at 11.] He called the prosecutor a "con man," described his prison as "completely corrupt," accused officers of having a "white supremacist ideology and a Klan mentality," and suggested that "they're just doing whatever they want to do up there because they know that they're correctional officers and whatever we do to them, they're going to get away with it." [*Id.* at 106-107.] Given (1) the vehemence and constancy of these accusations and (2) the fact that he expressly "did not care" what sentence he received, it is highly improbable that Pedro would have abandoned this narrative during the plea colloquy.[6]

---

[6] The Court recognizes that it "does not make sense to say that a defendant's protestations of innocence belie his later claim that he would have accepted a guilty plea." *Griffin*, 330 F.3d at 738. But the facts at issue here involve more than "protestations of innocence." They also involve Pedro's repeated admission that (1) he was already serving an effective life sentence and (2) the length of his additional sentence was "irrelevant" and he "did not care" at the time what sentence he received. [TR: Evidentiary Hearing at 19, 23.] The confluence of these two facts suggests that Pedro had no intention of admitting his guilt.

To be clear, the Court does not propose that courts may never find prejudice resulting from at attorney's failure to communicate a plea offer whenever the petitioner is already serving a life sentence. There may be cases where, given the unique facts at issue, such a petitioner might establish (1) a reasonable probability that he would have accepted the uncommunicated offer and (2) some meaningful rationale for resentencing him in spite of his existing life sentence. But this is not that case. Pedro's testimony is incoherent and incredible, and the remaining evidence strongly suggests that he never intended to plead guilty. The Court will thus deny his Motion to Alter or Amend. *Cf. United States v. Marks*, 561 F. App'x 42, 45 (2d Cir. 2014) (affirming trial court's rejection of petitioner's claim that he would have accepted plea agreement and finding "deference is particularly appropriate . . . [in light of] the district court's experience with the parties, its familiarity with the record, and its unique opportunity to judge the credibility of witnesses it observed firsthand.").

## C

Pedro also filed a "Motion for Recusal" on the grounds that (1) the undersigned is a former United States Attorney, and thus has a "longstanding working relationship" with the prosecutors in that office, and (2) the Court made statements at sentencing that allegedly reflected a "lack of impartiality." [R. 362 at 2-3.] Judges are "presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise." *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007) (internal quotations and citation omitted). The mere fact that a judge previously served in government is not enough to meet this burden; instead, the petitioner must show that the judge "served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3). That

is not the case here.  Because Pedro provides no other plausible basis for finding that this previous experience made it impossible for the Court to remain impartial, this claim fails.  *See, e.g., Stringer v. Astrue*, 465 F. App'x 361, 366 (5th Cir. 2012) (rejecting motion for recusal on account of judge's prior role as United States Attorney and noting that "there [was] no evidence" of the judge's involvement in the case during her tenure).

The Court's comments at sentencing likewise fail to demonstrate any bias or partiality.  Pedro makes the odd claim that the Court "stated several times along with [Mr. Molloy, the prosecutor in the case] that [Pedro] was 'unrepentant' [and] 'beyond saving.'" [R. 362 at 3.]  That is a deliberate mischaracterization of the sentencing hearing.  The Court did not make these statements "along with Mr. Molloy"; those statement were made by Mr. Molloy alone, not the Court. [R. 276 at 85.]  Any objection Pedro may have to the prosecutor's conduct is irrelevant to his Motion for Recusal.

The Court did say that "word needs to get out within [Pedro's prison] and the federal prison system generally that there will be a substantial punishment for taking matters into your own hand[s], or even reacting to perceive[d] slights in a violent way." [R. 276 at 113.]  But a court's expressed desire to deter future criminal conduct does not indicate personal bias or partiality.  *See, e.g., United States v. Taylor,* 800 F.3d 701, 708, 715 (6th Cir. 2015) (noting trial court expressed a desire to create a "deterrent effect" by "send[ing] a message to [the defendant], as well as others, that this conduct is to be avoided," and finding that "the court provided a reasoned explanation for its sentence.").  More broadly, the Court's comments at sentencing simply recognized and applied the facts relevant to Pedro's case.  And "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism

11

or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). The Court did not, and does not, possess any such antagonism.

**D**

Lastly, the Court will also deny Pedro's Motion for Certificate of Appealability and Motion for Leave to Appeal In Forma Pauperis. [R. 365, 371.] In its previous order, the Court already denied Pedro a certificate of appealability because he had failed to "demonstrate that reasonable jurists would find the district court's assessment of [his] constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The Court similarly finds nothing debatable about the conclusions drawn in both (1) this order and (2) the order at DE 368. And for the same reasons noted above, any appeal of this order would not be taken in good faith. The Court will thus deny Pedro's motion to proceed in forma pauperis on appeal. *See* Fed. R. App. P. 24(a)(3)(A).

**III**

Pedro's claims are meritless. Accordingly, the Court **HEREBY ORDERS** as follows:

    **(1)** The remainder of Pedro's Motion to Alter or Amend **[R. 361]** is **DENIED;**

    **(2)** Pedro's Motion for Recusal **[R. 362]** is **DENIED**;

    **(3)** Pedro's Motion to Appeal In Forma Pauperis **[R. 365]** is **DENIED**; and

    **(4)** Pedro's Motion for Certificate of Appealability **[R. 371]** is **DENIED.**

This 21st day of September, 2016.

Gregory F. Van Tatenhove
United States District Judge